CITY OF PORTLAND

*vs.*

ATLANTIC AND ST. LAWRENCE RAILROAD COMPANY.

Cumberland.    Opinion December 27, 1882.

*Railroads.    Municipal bonds.    Railroad securities.    Contract.    Tender.*

The city of Portland issued its bonds for a large amount, in aid of the defendant company, payable at a future time; the company giving mortgages and bonds to the city, conditioned "that the company would pay the interest and principal of all said bonds as the same should become payable and mature, and would save and hold the city harmless from the issue of the same." The company being unable to meet its engagements, the city at the instance of and with the co-operation of the company, obtained liberty from the legislature to issue new bonds for the balance due in renewal, payable at a specified time in the future, and the bonds and mortgages (securities) were extended; the priority of security and the lien of the city to be in no way impaired. *Held*;

1. The securities given by the company apply to and are available for the protection of the city for the new bonds issued by it, in renewal of unpaid balances.

2. That the provision in the act of the legislature (stat. 1868, c. 601,) for a sinking fund, and authorizing that such fund should be turned over to the city in full discharge of the unsatisfied indebtedness, when it shall equal the same, would not authorize the company to borrow money to add to the sinking fund; and that money obtained otherwise than as required by statute, is not to be regarded as belonging to the statutory sinking fund.

3. That the contract between the parties providing for the payment "of the accruing interest on all unsatisfied balances of the company's obligations to the city," negatives the obligation of the company to pay the interest or principal before they shall become due and mature; and that it equally negatives the obligation of the city to receive the same.

4. That the contract forbids a payment which would impose a loss upon the city.

A tender cannot be made to discharge a debt where the creditor could not enforce its payment.

ON REPORT.

Action of covenant broken.

The writ is dated August 4, 1881, and declares upon a breach of the following contract, by reason of the failure of the defendant corporation to pay $23,610 of interest, which accrued and became due and payable upon the unsatisfied balance of the company's obligation to the city, May 2, 1881.

(Contract.)

"Agreement entered into on the thirty-first day of October, 1868, between the city of Portland, and the Atlantic and St. Lawrence Railroad Company, under authority of an act of the legislature of Maine, passed March 3, 1868, entitled an act. making further provisions respecting the loans of credit heretofore made by the city of Portland to the Atlantic and St. Lawrence Railroad Company.

"Whereas, the city heretofore, under the several acts of August 1, 1848, and July 27, 1850, issued and delivered its bonds to said company, which were negotiated for the use of the company, in aid of the construction and equipment of its Railroad, and were issued and dated as follows, namely, under the act of August 1, 1848:

| | |
|---|---:|
| On the first day of December, 1848, . . | $200,000 |
| On the first day of May, 1849, . . . | 100,000 |
| On the first day of August, 1849, . . | 100,000 |
| On the first day of November, 1849, . . | 75,000 |
| On the first day of February, 1850, . . | 200,000 |
| On the first day of July, 1850, . . . | 200,000 |
| On the first day of November, 1850, . . | 75,000 |
| On the first day of January, 1851, . . | 50,000 |

In all,     $1,000,000

And under the act of 1850, on the first day of February, 1851, in all $500,000, all of which bonds were payable in twenty years from their respective dates, and are now outstanding.

"And the railroad company, at the several dates of the aforesaid issues, gave to the city, as required by law, its several obligations, under the seal of the company and signatures of the directors, for the same several amounts, conditioned in substance that the company would pay the interest and princi-

pal of all said bonds, as the same should become payable and mature, and would save and hold the city harmless on account of the issue of the same.

"And whereas, the railroad company, afterwards, as required by the act of 1850, on the third day of February, 1851, executed and delivered to the city a mortgage of all its railroad, property and franchise, for security of performance of all the several obligations so given by the company to the city, and for the enforcement of the lien given by law to the city, upon the said railroad property and franchise; and afterwards, on the third day of April, 1853, in pursuance of a covenant in said mortgage, executed and delivered to the city, another mortgage on the same railroad property and franchise, as then existing, for further assurance, and additional security for performance of the same conditions.

"And whereas, it was further provided, by said acts of 1848, and 1850, that sinking funds should be established for the redemption of the bonds so issued by the city, which sinking funds were, in fact, so established, and had accumulated, on the thirty-first day of July last, to the sum of $455,290.73, for the fund under the act of 1848, and to the sum of $204,806.80, under the act of 1850, and it has now become evident, that the said funds will not, nor will either of them, at the maturity of the city bonds aforesaid, be of sufficient amount to redeem in full the city debts, to which the same are applicable, but will amount, severally, to very nearly one-half of the respective debts.

"And whereas, the railroad company has represented to the city, that it will be unable to fulfill its obligations so given to the city, by paying the principal of the city bonds aforesaid at maturity, beyond the amount that the respective sinking funds will supply therefor, and it appears that the city will be obliged to pay the balance of said bonds over and above the amount applied from the sinking funds towards redemption of the same, and will thereupon become entitled to demand from the company the immediate reinbursement of such balance, and in case of failure to make such reinbursement, will be entitled to pursue and enforce all its remedies, under the

said acts of 1848 and 1850, for such default; and the railroad company, in view of the premises, has requested the city to grant to it and its assigns, an extension of the company's several obligations aforesaid, and an extension of the mortgages given for security of the same, for all the amount of the principal of the bonds, which the city will be so obliged to pay; and the parties have united in procuring the enactment of the aforesaid act of March 3, 1868, to provide the requisite legal authority and power, for such arrangements as require to be made by the city, in this behalf.

"And whereas, it is contemplated by the parties to this agreement that the commissioners of the sinking funds established under the acts of 1848 and 1850, at the several times of the maturity of the city debts aforesaid, will be authorized to apply, and will apply, out of such respective funds, portions of the same, towards the redemption of the city debts so maturing, corresponding to the proportions, which the whole respective funds, as then existing, shall bear to the whole respective city debts to be redeemed, it being now estimated that the said proportion will be one-half part, very nearly, and the parties have agreed, that they will unite, if necessary, in such proceedings as may be suitable and requisite to give to the commissioners full authority to apply the existing sinking funds, in such proportional parts."

"Now, in consideration of the premises, in pursuance of the representation and request so made by the railroad company, and under the authority of the acts of March 3, 1868, subject to all the limitations, conditions and restrictions of said act, the city hereby agrees, that it will grant an extension of the balances aforesaid of the company's obligations hereinbefore mentioned, and an extension of the mortgages given for security of performance thereof; which extension shall be for the term of eighteen years from the first day of January, 1870, for all the balances of the obligations so given by the company to the city under the act of 1848, and for the term of eighteen years from the first day of February, 1871, for all the balances of the obligations so given under the act of 1850.

"And this agreement for extension shall be subject to all the arrangements, conditions and stipulations hereinafter provided and expressed as follows, that is to say:

"I. The railroad company engages that, notwithstanding anything contained in this agreement, it will continue to provide for and pay the interest which shall accrue and be payable on all the now outstanding bonds of the city, issued under the acts of 1848 and 1850, until the maturity of the principal of the same, and that it will continue to make all such contributions, as it is by law required to make, to the sinking funds established under those acts; and in case of default in either of these engagements, the city is to be at liberty to terminate the extension hereby granted, and may resort to all the legal remedies for such default, provided and existing under the acts of 1848 and 1850.

"II. The railroad company further engages, that it will semiannually, provide for and pay to the city, or deposit to the use of the city, at such place as the city treasurer shall appoint, the accruing interest upon all the unsatisfied balances of the company's obligations given to the city as aforesaid, so long as any such balances shall remain undischarged; and that it will make and pay all the contributions required by the act of March 3, 1868, to be made to the new sinking fund established by that act; and in case of default in either of these engagements, the city shall be at liberty to terminate the extension hereby granted, and may resort to its legal remedies, provided and existing under the acts of 1848 and 1850, for enforcement of the company's obligations aforesaid.

"III. And inasmuch as it is understood by the parties, that the city will be obliged to issue its new bonds to an amount equal to the unsatisfied balances of the company's obligations aforesaid for the purpose of raising money, to discharge a corresponding balance of its prior bonds issued under the acts of 1848 and 1850, the railroad company, in consideration of the extension hereinbefore agreed to be given, engages that it will pay to the city all the cost of preparing and issuing such new bonds, and of negotiating the same, and will make up to the·

city any loss that may be sustained by discount, in negotiating the same. And the city engages that it will offer to the railroad company the option of procuring the negotiation of the same at seasonable times and at the most favorable rates to be obtained in the market.

"IV. All the sums, which shall be applied by the commissioners of the sinking funds, under the acts of 1848 and 1850, towards the redemption of the bonds issued under these acts, shall be a discharge of so much of the railroad company's obligations aforesaid, and shall be appropriately indorsed thereon.

"V. And the parties to this instrument further agree, that their intention is, to provide for the ultimate performance and payment of all the balances of the company's obligations aforesaid, in the manner which shall be least burdensome and most advantageous to the parties, but without pecuniary loss or detriment to the city, in any event, and without diminishing or impairing any security held by the city; and that, in case of any want of authority in the commissioners of the sinking funds under the acts of 1848 and 1850, to apply these funds in the manner now contemplated and expressed in this instrument, or, in case of any other legal difficulty or impediment in effecting the object and intent of the parties, by the particular arrangements, now made therefor, they will negotiate further thereon, and will use all their reasonable and lawful endeavors, and enter into all such further proceedings and agreements, as may be necessary and deemed adequate to accomplish the true intent, meaning and object of this agreement, as hereinbefore declared. In witness whereof, this agreement is subscribed in behalf of the city, by Jacob McLellan, mayor, duly authorized by a vote of the city council, passed on the seventeenth day of September, 1868, and in behalf of the railroad company by St. John Smith, president, duly authorized by a vote of the directors passed on the twenty-second day of October, 1868, and the said parties have hereto affixed their respective seals, this thirty-first day of October, in the year of our Lord one thousand eight hundred and sixty-eight." Duly signed, etc.

Other material facts are stated in the opinion.

*William H. Looney,* (*Clarence Hale* with him,) for the plaintiff.

*J. and E. M. Rand,* for the defendant.

Plaintiff complains only of non-payment of interest on May 2; this suit to collect it.

Now, in what part of agreement did defendant covenant to pay interest on May 2, 1881, or on May 2, in any year? If it is said that the interest on the new bonds issued by city became due and payable on May 2, no such evidence in case. And if there were, there is nothing in agreement about paying interest on new bonds. The defendant agreed to pay interest on its debt semi-annually,— on such day within every six months as it might elect.

Unless defendant was bound to pay on May 2, this action cannot be maintained.

Object and spirit of the act and agreement is, not to keep a claim and a liability alive and kicking for eighteen years, but to provide some collateral security for its payment as soon as possible. Nothing in the act or in agreement to prevent the company paying the debt at any time. Agreement fixes no particular time of payment; places no restriction upon time of payment; says nothing upon the subject; but act says, (section 6) — The fact (if it be a fact), that city hired money for eighteen years in connection with this matter, has no relevancy to this legal question. City hired upon such time as it pleased. Suppose city had hired it for one hundred years. We submit that defendant had a right to pay its debt to plaintiff at any time,— and as collateral to that debt, and as security for it, to pay at any time any amount it pleased into the sinking fund.

And having made the sinking fund equal to the debt, and having caused the amount to be tendered to the city, we have fully discharged our indebtedness.

APPLETON, C. J.　This is an action on a contract entered into by these parties on the thirty-first of October, 1868.

The city of Portland had issued its bonds in aid of the defendant corporation to a large amount, between August 1, 1848, and the date of the contract in suit.

The contract, after stating specifically the several issues of bonds, further adds that the railroad company, as required by law, gave to the plaintiff "its several obligations, under the seal of the company and signatures of the directors, for the same several amounts, conditioned in substance that the company would pay the interest and principal of all said bonds, as the same should become payable and mature, and would save and hold the city harmless on account of the issue of the same."

A sinking fund had been provided by the acts of 1848 and 1850, under which the bonds of the city had been issued, to meet its liabilities as they should mature; but was found insufficient. After deducting the sinking fund, there was due from the defendant corporation, the sum of seven hundred and eighty-seven thousand dollars. The plaintiff had the right to demand the immediate reimbursement from the defendants of the sum advanced, and to enforce its payment by foreclosing their mortgages and by suits on the defendant's bonds.

Such being the condition of the railroad company, it represented to the city its inability to meet its obligations by paying the principal of the city bonds at maturity, beyond the amount of the sinking fund, and "requested the city to grant to it and its assigns, an extension of the company's several obligations, . . . and an extension of the mortgages given for the security of the same for all the amount of the bond, which the city will be obliged to pay."

In pursuance of the united action of the city and the railroad company, the act of March, 1868, was passed, under the authority of which this contract was entered into, by which "subject to all the limitations, conditions and restrictions of said act, the city hereby agrees, that it will grant an extension of the balances aforesaid of the company's obligations hereinbefore mentioned, and an extension of the mortgages given for security of performance thereof; which extension shall be for the term of eighteen years from the first of January, 1870, for all the balances of the

obligations so given by the company to the city under the act of 1848, and for the term of eighteen years from the first of February, 1871, for all the balances of the obligations so given under the act of 1850."

The balances referred to in the contract were the bonds of the preceding issues which were then remaining unpaid, and which the company acknowledge they were unable to pay. New bonds corresponding to the "balances," that is, the unpaid bonds of the city, were issued. The act of 1868, was passed to enable the city to relieve the company by their issue. But it will be perceived no security of the city was to be relinquished. The time of payment of the indebtedness of the company and of the enforcement of the securities for their indebtedness, were extended; but nothing was discharged. But the securities given for the company's inbebtedness, are equally available to protect the indebtedness when extended, that is, the new bonds when given as the original bonds. Nothing but payment will discharge a mortgage. The renewal of a note, secured by a mortgage is not such a payment as will discharge the mortgage unless the parties so intended it. *Ellsworth* v. *Mitchell*, 31 Maine, 247; *Watkins* v. *Hill*, 8 Pick. 522; *Pomroy* v. *Rice*, 16 Pick. 22.

The new bonds given in renewal of those the company were unable to pay, are protected by the several obligations of the company specified in the contract, by which it is agreed "that the company would pay the principal and interest of said bonds, as the same should become payable and mature, and save the city harmless from the issue of the same."

The city, in pursuance of the act of 1868, issued at the instance and for the benefit of the company, its bonds payable at six per cent in eighteen years. The present rate of interest is three or four per cent. The company has on January 4, 1881, tendered the city "the full amount of said unsatisfied balances and of said unsatisfied indebtedness, to wit, the sum $787,000, the principal of said unsatisfied balances and unsatisfied indebtedness, and also the sum of $8,132.33, for the interest to that day upon said principal, in full discharge of such unsatisfied balance and indebtedness," which the city has refused to accept. If the tender is

available to the company in discharge of its obligations, then the city must be a loser by the difference between the interest it must pay and the interest it can obtain. It must provide for the investment of the funds to meet its maturing bonds and run the risk of its investments; a loss to be borne necessarily while the present rate of interest continues; a burden which no contract imposes upon it. It is obvious, if the position assumed by the learned counsel for the company be correct, the city will not be saved harmless as the company have agreed to do.

A creditor cannot enforce the payment of a debt before its maturity. A debtor cannot compel his creditor to receive his debt before it is due. The rights of the parties are equal and reciprocal. The city, if it wished, cannot compel the present payment of its outstanding liabilities for the company, nor can the company compel the city to receive at a loss what is neither due nor collectible.

The contract of these parties is made by its terms subject to certain "arrangements, conditions and stipulations."

By the first "the railroad company engages that, . . it will continue to provide for and pay the interest which shall accrue and be payable on all the now outstanding bonds of the city, issued under the acts of 1848 and 1850, until the maturity of the principal of the same," &c. "and in case of default, . . the city is to be at liberty to terminate the extension hereby granted, and may resort to all the legal remedies for such default, provided and existing under the acts of 1848 and 1850."

The provision to pay the accruing interest on outstanding bonds until their maturity, negatives any promise to pay the principal until such maturity. The city could not compel and were not bound to receive the payment of the principal. As new bonds were to be issued in extension of those which had been issued, and as the old bonds would be withdrawn by such issue, it cannot be doubted that these stipulations were, and were intended to be equally applicable to the new bonds as to those which they displaced. The company is to continue to pay the accruing interest, but the only interest which will accrue, is upon the bonds given under the extension which the city granted.

By the second stipulation "the company further engages, that it will semi-annually, provide for and pay to the city, or deposit to the use of the city, at such place as the treasurer shall appoint, the accruing interest upon all the unsatisfied balances of the company's obligations given to the city as aforesaid, so long as any balances shall remain undischarged, and that it will make and pay all the contributions required by the act of March 3, 1868, to be made to the new sinking fund established by that act," &c.

But "all the unsatisfied balances of the company's obligations given to the city" are represented by the bonds of the city whether old or new, "which shall remain undischarged." The payments are to be semi-annual and of the interest semi-annually accruing. There is no stipulation that more shall be paid to or received by the city.

The fourth stipulation recognizes the issue of new bonds "to an amount equal to the unsatisfied balances of the company's obligations," and provides for the issue of new bonds, and provides that "the company shall pay to the city all the cost of preparing and issuing such new bonds and of negotiating the same, and will make up to the city any loss that may be sustained by discount in negotiating the same."

By the fifth stipulation, the parties "further agree, that their intention is, to provide for the ultimate performance and payment of all the balances of the company's obligations aforesaid, in the manner which shall be least burdensome and most advantageous to the parties, but without pecuniary loss or detriment to the city, in any event, and without diminishing or impairing any security held by the city," &c.

The provision is for the ultimate, not the immediate payment of the balances of the company's obligations. But that payment is to be made "without pecuniary loss or detriment to the city, in any event." If the tender is a valid one and discharges the company's obligations, a loss is inevitable. The city cannot loan the funds tendered at a rate corresponding to the rate it has contracted to pay. But the contract provides against all loss, in any event. Hence the ground taken by the company is in direct opposition to the express language of its contract.

Provision is made for a new sinking fund by the act of 1868, c. 601, § 3. By the statute "the contributions to such further sinking fund shall be on each of the years 1869 and 1870, one thirty-second part of the average amount of such unsatisfied indebtedness, subsisting in those years; but afterwards, the sum of twenty-five thousand dollars annually, until the final re-imbursement and discharge of such indebtedness. All of such contributions shall be made by the railroad company in equal half yearly installments, on the first days of January and July in each year."

The statute determines precisely what shall constitute the sinking fund—how and by what payments it shall be created. Nothing but as provided by the statute, is a part of the sinking fund. The company are not authorized to contribute other sums to the fund. The sinking fund is obtained but in one way, in accordance with the statute. If sums other than prescribed by the statute, are paid to the fund for any purpose, they constitute no part of the statutory sinking fund.

By § 6 of chapter 601, "whenever the amount of the sinking fund hereby authorized . . shall be equal to the unsatisfied indebtedness aforesaid, the commissioners shall make over and deliver the same to the city, in full discharge of such indebtedness."

The company seek a discharge of their liability by a tender of the sinking fund But the statutory sinking fund created by § 3 was by the testimony of one of its commissioners, in round numbers, three hundred and fifty thousand dollars. The balance, four hundred and thirty thousand dollars, was no part of the sinking fund prescribed by the statute, § 6, and contemplated by the parties. The company had no authority to borrow and thus increase the fund. The city could not compel the company to enlarge the fund to the amount of its unsatisfied indebtedness. Neither can the company by funds obtained other than in accordance with the statute, compel the city to receive and discharge its claims against the company before their maturity.

The defence is not made out. The tender is not good. The city was to be fully indemnified "in any event." The defence is adverse to the spirit of the contract, which is equitable, and makes provision for the full and complete protection of the city. It is against the plain and natural meaning of the language used, which negatives the construction attempted to be put upon it.

*Judgment for plaintiff.*

BARROWS, DANFORTH and PETERS, JJ., concurred.

VIRGIN and SYMONDS, JJ., did not sit, being interested.